IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VINAY YADAV, | § | |
| | § | |
| *Plaintiff,* | § | SA-20-CV-00005-FB-ESC |
| | § | |
| vs. | § | |
| | § | |
| FROST BANK, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Frost Bank's Motion to Dismiss [#40], Defendant's Motion for Sanctions [#42], and Plaintiff's Motion for Leave to File Plaintiff's Second Amendment to Complaint [#50]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#5]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In considering the motions before the Court, the undersigned has reviewed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss [#41], Defendant's Reply to Plaintiff's Response in Opposition [#43], Plaintiff's Sur-reply to Defendant's Motion to Dismiss [#45], Plaintiff's Response in Opposition to Defendant's Motion for Sanctions [#44], Defendant's Reply to Plaintiff's Response in Opposition [#46], Plaintiff's Sur-reply to Defendant's Motion for Sanctions [#47], Plaintiff's Proposed Second Amended Complaint [#50], Defendant's Response in Opposition to Plaintiff's Motion for Leave to Amend [#51], and Plaintiff's Reply to Defendant's Response in Opposition [#52].

1

For the reasons set forth below, the undersigned recommends that the Court **GRANT IN PART** Defendant's Motion to Dismiss [#40] and **REMAND** the case to state court.   The undersigned further recommends that the Court **DENY** Defendant's Motion for Sanctions [#42] and Plaintiff's Motion for Leave to Amend [#40].

## I.  Procedural Background

Plaintiff Vinay Yadav ("Plaintiff"), proceeding *pro se*, originally filed this case in the 288th Judicial District Court of Bexar County, Texas on December 3, 2019 against his former employer, Defendant Frost Bank ("Defendant").  (Orig. Pet. [#1] at 5.)  In his Original Petition, Plaintiff alleges that Defendant wrongfully terminated his employment and wrongfully directed the San Antonio Police Department ("SAPD") to forcefully remove him from Defendant's premises.  Plaintiff's Original Petition asserted claims of retaliatory discharge, defamation, intentional infliction of emotional distress ("IIED"), assault, and discrimination on the basis of race, color, religion, and age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").

This case was removed to federal court on January 3, 2020 based on federal question jurisdiction over the Title VII and ADEA claims in Plaintiff's Original Petition.  Defendant thereafter filed a motion to dismiss.  The undersigned subsequently ordered Plaintiff to file an Amended Complaint curing the deficiencies in his Original Petition [#34].  The undersigned directed Plaintiff to cure certain deficiencies with respect to his retaliatory discharge claim under the *Sabine Pilot* doctrine, his assault clam, his defamation claim, and his IIED claim.  Plaintiff filed his First Amended Complaint on June 9, 2020 [#38], which is the live pleading.  Plaintiff's Amended Complaint reasserts his claims of retaliatory discharge, defamation and IIED.  Plaintiff also more specifically pleads his assault claim, alleging that the assailants were Defendant's

employees Sergeant Ray Ortega, an off-duty police officer; Vice President of Security Dwight Obey; and several executives from the human resources department.  Plaintiff's Amended Complaint removes the Title VII and ADEA claims altogether but adds a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Am. Compl. [#38] at ¶¶ 95–138.)

Defendant thereafter filed the Motion to Dismiss and Motion for Sanctions that are the subject of this report and recommendation.  In addition to filing responses to the motions, Plaintiff filed his Motion for Leave to file a Second Amended Complaint, which is also addressed herein.  The motions are ripe for review.

## II.  Motion to Dismiss

Defendant moves for dismissal of Plaintiff's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that: (1) Plaintiff's retaliatory discharge claim under the *Sabine Pilot* doctrine fails because he fails to allege that he was terminated for refusing to perform an illegal act that involved a criminal penalty; (2) Plaintiff's assault claim fails because Defendant cannot be vicariously liable for the actions of its employee Sergeant Ray Ortega, an off-duty Bexar County police officer, during his arrest of Plaintiff; (3) Plaintiff's RICO claim fails because he does not plead a pattern of racketeering or the existence of an enterprise; (4) Plaintiff's defamation claim based on a police report is time-barred and privileged; and (5) Plaintiff's IIED claim fails as a matter of law.

Plaintiff's Amended Complaint fails to cure the pleading deficiencies identified with respect to his retaliatory discharge claim under the *Sabine Pilot* doctrine, his defamation claim, and his IIED claim.  Plaintiff's new RICO claim suffers from pleadings defects as well.  As to Plaintiff's assault claims, Defendant cannot be held vicariously liable for the acts of Sergeant

Ortega during his arrest of Plaintiff, nor for the actions of the human resources executives. However, it is plausible that Defendant could be held vicariously liable for the actions of Dwight Obey.   The District Court should therefore dismiss all claims asserted in Plaintiff's First Amended Complaint except Plaintiff's state law assault claim.

A.      **12(b)(6) Motion Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

The undersigned is mindful that in evaluating the merits of a motion to dismiss, a court views *pro se* pleadings under a less stringent standard than those drafted by an attorney.  *See Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).  As a result, Plaintiff's filings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from these pleadings.  *See id.*

**B.      Deficiencies in Plaintiff's Retaliatory Discharge Claim**

In his First Amended Complaint, Plaintiff brings a claim for retaliatory discharge against Defendant based upon *Sabine Pilot Servs., Inc. v. Hauck,* 687 S.W.2d 733 (Tex. 1985).  (Am. Compl. [#38] at ¶ 43.)  Under Texas law, there is an exception to Texas's employment-at-will doctrine, "which permits suits for wrongful termination where the employee was terminated for refusal to perform illegal acts."  *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (citing *Sabine Pilot Servs.,* 687 S.W.2d at 735).  To establish a prima facie case of wrongful termination under *Sabine Pilot*, the plaintiff must prove that: (1) he was required to commit an illegal act which carries criminal penalties; (2) he refused to engage in the illegality; (3) he was discharged; and (4) the sole reason for his discharge was a refusal to commit an unlawful act.  *Id.* at 676 (citing *Sabine Pilot*, 687 S.W.2d at 735).

Plaintiff fails to properly plead a retaliatory discharge claim under the *Sabine Pilot* doctrine because he alleges that he was terminated for reporting illegal activity to his superiors, not that he was fired for refusing to perform an illegal act himself.  The Texas Supreme Court has refused to recognize a private whistleblower cause of action.  *See Austin v. Healthtrust, Inc.*, 967 S.W.2d 400, 401 (Tex. 1998) (refusing to recognize a private whistleblower cause of action because this would "essentially eclipse more narrowly-crafted statutory whistleblower causes of action").  Whistleblowing is the gravamen of Plaintiff's complaint here, not termination for

refusal to do something illegal.  Simply put, these allegations do not state a *Sabine Pilot* claim. *See Carrillo v. Tifco Indus., Inc.*, 547 Fed. App'x 419, 423–24 (5th Cir. 2013) (applying Texas law and refusing to apply the *Sabine Pilot* doctrine where an employee was terminated for reporting illegal activity of another employee).

This Court previously directed Plaintiff to cure this same deficiency when it ordered Plaintiff to file an Amended Complaint.  Plaintiff was notified that his Original Petition "failed to allege facts that support his assertion that the work he was required to do was an illegal act that carried criminal penalties."  Plaintiff failed to cure this deficiency.  Plaintiff's claim for retaliatory discharge should therefore be dismissed.

**C.    Plaintiff's Assault Claim**

Plaintiff's assault claim alleges that Defendant—through its employees Michael Landin, Dwight Obey, Sergeant Ray Ortega, Victoria Gonzales, and an employee with the last name "Torres"—"battered him to the ground" during his arrest for criminal trespassing.  (Am. Compl. [#38] at ¶ 76.)  Plaintiff also alleges that Frost employee Anette Alonzo authorized the assault. (*Id.*)  An employer can be held vicariously liable under the doctrine of *respondeat superior* for an assault committed by its employees within the course and scope of their employment. *Houston v. Transit Co. v. Felder*, 208 S.W.2d 880, 881 (Tex. 1948).

1.    Alleged Assault by Sergeant Ortega

Plaintiff's assault claim against Defendant based on the alleged assault of Plaintiff by Sergeant Ortega fails because, even though Sergeant Ortega was employed by Defendant when he arrested Plaintiff, Defendant cannot be vicariously liable for Ortega's actions undertaken in his capacity as a police officer.  Sergeant Ortega is an off-duty police officer who was employed by Frost to assist with security.  (Am. Compl. [#38] at ¶ 13.)  In Texas, "an off-duty police

officer's employer is not vicariously liable for the acts of the officer if the officer was acting in her public capacity at the time she 'committed the acts for which the complaint [was] made.'" *Williams v. Dillard's Dept. Stores, Inc.*, 211 Fed. App'x 327, 329 (5th Cir. 2006) (quoting *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.)). This is true "even though the employer may have directed the activities." *Id.* "Where an officer is performing a job incident to enforcing the public laws, he is acting in the course and scope of his employment as a police officer even if the private employer directed him to perform the duty." *Larkin v. Johnson*, 44 S.W.3d 188, 189 (Tex. App.—Houston [14th Dist.] 2001, pet. denied.). "If an off-duty officer observes a crime, as a matter of law, he becomes an on-duty officer for purposes of determining whether or not the private employer is vicariously liable for the officer's actions." *Morgan v. City of Alvin*, 175 S.W.3d 408, 417 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

On the day of the alleged assault, Sergeant Ortega escorted Plaintiff out of the building, at the command of Defendant, after Plaintiff chose to leave the premises instead of going to a meeting with human resources executives. (*Id.* at ¶¶ 15, 17; Def. Motion to Dismiss [#40] at 4.) When Plaintiff subsequently changed his mind and expressed that he did not want to leave but refused to go to the meeting, Ortega arrested Plaintiff for criminal trespass. (Incident Report [#40-1] at 5.) When Ortega arrested Plaintiff for criminal trespass, he was acting in his capacity as a police officer. Therefore, Defendant cannot be held vicariously liable for Sergeant Ortega's actions in making the arrest.

2. Alleged Assault by Obey

Plaintiff pleaded sufficient facts to state a claim against Defendant for vicarious liability for Obey's alleged assault of Plaintiff. Obey is Defendant's Assistant Vice President of Security.

The Texas Supreme Court has held that an employer can be vicariously liable for an employee's intentional torts when the torts are "closely connected" with an employee's duties. *See GTW Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999). "If the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be held liable." *Id*. at 618.

Courts have extended vicarious liability to employers based on intentional torts of employees who are authorized to use force in their line of work, such as nightclub bouncers. *See, e.g., Deo v. The Geo Group, Inc.*, No. SA-16-CV-173-XR, 2017 WL 835209, at *2 (W.D. Tex. Mar. 2, 2017); *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 882–83 (Tex. App.—Dallas 2003, no pet.). In such circumstances, "[w]hen an employee commits an assault, it is for the trier of fact to determine whether the employee ceased to act as an employee and acted instead upon his own responsibility." *G.T. Mgmt.*, 106 S.W.3d at 884.

It is implicit in Obey's job as Defendant's Assistant VP of Security to protect the premises of Defendant's business. Therefore, because Obey's alleged use of force is likely "closely connected" to Obey's duty as a security officer to remove unwanted persons from the premises, his alleged assault of Plaintiff could be within the course and scope of his employment. Thus, Plaintiff has stated a claim that Defendant is vicariously liable for the alleged assault of Plaintiff by Obey.

### 3.  Actions by Alonzo, Gonzales, Torres, and Landin

Plaintiff also names other employees of Defendant—Alonzo, Gonzales, Landin, and Torres—and generally alleges they were involved in the assault or aided and abetted the assault. (Am. Compl. [#38] at ¶ 76.) Plaintiff's pleading does not describe the positions held by these employees; nor does it provide even the first names of Gonzales or Torres. According to

Defendant, Annette Alonzo is the Chief Human Resources Officer, and Michael Landin and Virginia Gonzales are Senior Vice Presidents of Human Resources.  (Def. Response [#51] at 2.)

Whereas the use of force may be closely connected to the job duties of a security officer like Obey, the use of force is not connected to the duties of executives in a human resources department, such as Alonzo, Gonzales, and Landin.  And Plaintiff fails to plead that Alonzo, Gonzales, or Landin's alleged actions were within the scope of their employment.

As for Torres, Plaintiff's pleading does not identify his or her position, and Plaintiff does not plead whether Torres's actions were undertaken in the course or scope of his or her position either.  It is essential in determining an employer's vicarious liability to know what job the alleged tortfeasor has and whether his or her actions were "within the scope" of employment.  Given Plaintiff's scant pleadings with regard to Torres, this employee's alleged actions cannot form the basis of Plaintiff's assault claim against Defendant.

In summary, accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, Plaintiff has stated a claim for Defendant's vicarious liability based on his alleged assault by Obey, but not by the other employees named in his Amended Complaint.  The Court should therefore deny Defendant's Motion to Dismiss as to Plaintiff's assault claim.

**D.**     **Plaintiff's RICO Claim**

Plaintiff's Amended Complaint adds a new RICO claim against Defendant under 18 U.S.C. §§ 1959, 1962, and 1964.  Although the Court's previous Order directing Plaintiff to file an amended pleading was limited to an order to cure deficiencies identified in the Original Petition, the undersigned will consider the sufficiency of this newly added claim as well.  Plaintiff alleges that Defendant "indulged in the Racketeering by unlawfully sending Plaintiff to jail, cooking [a] fraudulent police-report, committing perjuries, [and] destr[oy]ing evidence [] to

cover up Frost bank's malfeasance." (Am. Compl. [#38] at ¶ 99.) Plaintiff also alleges that Defendant colluded with the State of Texas in pursuing false charges against Plaintiff. (*Id.* at ¶ 103.) Plaintiff fails to properly plead a RICO claim for a variety of reasons.

"Reduced to its three essentials, a civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991) (citing *Delta Trust & Tractor Inc. v. J.I. Case Co*., 855 F.2d 241, 242 (5th Cir. 1988)). The RICO "person" who commits the predicate acts must be distinct from the enterprise. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Where a plaintiff alleges that a RICO enterprise consists merely of a corporation associating with its own employees, the claim fails. *See Khurana v. Innovative Health Care Sys., Inc*., 130 F.3d 143, 154–55 (5th Cir. 1997), *vacated on other grounds sub nom., Teel v. Khurana*, 525 U.S. 979 (1998). "The employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* at 155.

Plaintiff fails to properly plead the existence of an "enterprise" because he alleges that the enterprise consists of Defendant and Defendant's employees.[1] Further, Plaintiff fails to allege the requisite "pattern of racketeering activity" needed for a RICO claim because he does not plead two or more related acts of racketeering that either constituted or threatened continued

---

[1] Plaintiff's pleading vaguely alleges collusion with "the State of Texas" but does not plead specific facts in support of this allegation. To the extent that Plaintiff intends to bring a malicious prosecution claim, that is a Texas tort, not a federal claim. *See Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc) (holding there is no stand-alone constitutional malicious prosecution claim). As is discussed, *infra*, the Court should decline to exercise supplemental jurisdiction over any state-law claims by Plaintiff given that all federal claims must be dismissed. Regardless, any malicious prosecution claim under Texas law would fail because the prosecution of Plaintiff resulted in his conviction. *See Richey v. Brookshire Grocery Co*., 952 S.W.2d 515, 517 (Tex. 1997) (holding that elements plaintiff is required to prove include that the prosecution was terminated in plaintiff's favor and the plaintiff was innocent).

criminal activity.  *See* 18 U.S.C. § 1961(5); *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).

Nor does Plaintiff allege a "pattern," which requires allegations that the acts are both "related" to

each other and have "continuity."  *See Burzynski*, 989 F.2d at 742.  Pleading multiple predicate

acts that are all related to a single offense does not sufficiently plead a continued pattern of

criminal activity.  *See Montesano v. Seafirst Comm. Corp.*, 818 F.2d 423, 426 (5th Cir. 1987)

("[A] single robbery of a bank cannot be made into a pattern by pointing to a mailing and a

phone call (such as to distract bank employees by giving false information).").  The acts alleged

by Plaintiff, crafting a fake police report and destroying evidence, all directly relate to his

November 19, 2018 arrest and do not demonstrate a pattern of activity.  Because Plaintiff fails to

properly plead any of the RICO elements, the District Court should dismiss Plaintiff's RICO

claim.

**E.       Plaintiff's Defamation Claim**

Plaintiff brings a defamation claim based on allegations of false statements published by

Defendant in a police report.  (Am. Compl. [#38] at ¶ 140.)  Plaintiff's claim fails because it is

time-barred.

Defamation claims are subject to a one-year statute of limitation under Texas law.  *See*

Tex. Civ. Prac. & Rem. Code § 16.002.  Claims for defamation generally accrue when the

allegedly defamatory matter is published or circulated.  *Glassdoor, Inc. v. Andra Group, LP*, 575

S.W.3d 523, 528 (Tex. 2019).  The allegedly false statements by Defendant were published as a

matter of public record in a police report filed on November 19, 2018.  Plaintiff is deemed to

know of the statements the day the report was filed: November 19, 2018.

Plaintiff did not file suit based on the statements until December 3, 2019, after the statute

of limitations period had run.  Plaintiff alleges, however, that the police report was republicized

"to third parties and federal agencies" on February 26, 2020, April 3, 2020, and on June 23, 2020. (Am. Compl. [#38] at ¶ 14; Pl. Response [#41] at 16.) Plaintiff is not specific about where or to whom the report was publicized; however, by comparing these dates with the dates of various filings in this case, the undersigned believes Plaintiff is referring to Defendant attaching the police report as an exhibit to its motions to dismiss. (*See* Def. Motion to Dismiss [#12] at 17–21 (filed on February 26, 2020); Def. Motion to Dismiss [#40-1] (filed on June 23, 2020).) With regard to April 3, 2020, the only documents filed with the court on this day were each party's scheduling recommendations; neither party's filings mention the police report [#31, 32]. Therefore, the undersigned will focus on whether the republications of the police report in the Defendant's motions to dismiss filed on February 26, 2020 and June 23, 2020 can give rise to a valid defamation claim.

Each time a defamatory statement is brought to the attention of a third party, a new publication has occurred. *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 251 (Tex. 1942). Thus, the republication of a defamatory statement can still fall within the limitations period even though the original publication is time-barred. *Carr v. Mobile Video Tapes, Inc*. 893 S.W.2d 613, 619 (Tex. App.—Corpus Christi 1994, no writ), *abrogated on other grounds by Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414 (Tex. 2015). However, the republishing of allegedly defamatory statements in a police report through court filings is not considered a republication that would extend the statute of limitations, because statements made in court filings are privileged. *See Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942) ("Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel.") This privilege covers written statements by parties or witnesses and

attaches to all aspects of the proceedings including "any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–917 (Tex. 1982)).

Therefore, neither statements in Defendant's motions to dismiss nor attachments to it qualify as republication of statements that could extend the statute of limitations. All statements published in a court filing are privileged. If Plaintiff is referring to other republications, he has not sufficiently pleaded any facts that would allow the Court to assess whether the republications would alter the start date of the statute of limitations. Therefore, the statute of limitations as to Plaintiff's defamation claim began to run on November 19, 2018, and Plaintiff's defamation claim is time-barred.

## F.    Plaintiff's IIED Claim

Plaintiff brings an intentional infliction of emotional distress (IIED) claim against Defendant for allegedly arresting him, seizing his belongings, filing a false police report, and for harassing him. (Am. Compl. [#38] at ¶¶ 162, 179, 183.) Plaintiff's IIED claim fails as a matter of law.

Texas law recognizes the tort of IIED. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993). But the Texas Supreme Court has limited the availability of the IIED tort, calling it a "'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *see also Noack v. YMCA of Greater Houston Area*, 418 Fed. App'x 347, 353 (5th Cir. 2011). If a plaintiff's complaints are covered by other statutory or common law remedies, a plaintiff cannot assert them as IIED claims, even in instances where the other remedies are barred. *Creditwatch*, 157 S.W.3d at 816. "[Intentional infliction of emotional distress] was never intended as an easier and

broader way to pursue claims already protected by our expanding civil and criminal laws." *Id*. at 818.

Here, Plaintiff has asserted claims for assault, defamation, RICO, and retaliatory discharge against Defendant stemming from the same acts and conduct as provide the basis for his IIED claim. As a "gap-filler" tort, IIED was created for the "limited purpose of allowing recovery in those rare instances where a defendant inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). If instead "the gravamen of a plaintiff's complaint is really another tort," then IIED "should not be available." *Id*. Thus, the Court must determine whether an IIED claim is fulfilling its "gap-filler" purpose by whether the same conduct alleged to give rise to the IIED claim would also give rise to other statutory or common-law claims. If so, then the IIED claim would be duplicative of the statutory or common-law claim and thus fail to serve as a "gap-filler." *Id*. at 448. In this case, Plaintiff's IIED claim does not serve any gap-filler purpose. The conduct by Defendant that Plaintiff alleges gives rise to the IIED is the same as the conduct Plaintiff alleges in supporting his assault, defamation, and retaliatory discharge claims. Also, Plaintiff's IIED claim seeks identical relief, namely monetary damages, as Plaintiff seeks on his other claims.

Additionally, the Court's Order directing Plaintiff to file his Amended Complaint instructed Plaintiff to explain the "extreme and outrageous" conduct that is distinct from his assault allegation. Plaintiff instead only reiterated conduct already covered by his other claims against Defendant. Plaintiff's claim for IIED should be dismissed.

### III.  Sua Sponte Remand

In accordance with Fifth Circuit law, Plaintiff was given an opportunity to cure pleading deficiencies identified in his Original Petition.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case.").

Plaintiff failed to cure the pleadings deficiencies with his retaliatory discharge, IIED, and defamation claims.  He included a new claim under RICO but failed to plead the essential elements of this cause of action.  The only claim Plaintiff cured to the standard required under Rule 12(b)(6) is his assault claim.  Plaintiff's amended pleading also abandons the ADEA and Title VII claims that conferred federal jurisdiction at the time of removal.  Thus, if the District Court accepts the undersigned's recommendation and dismisses all of Plaintiff's claims except his assault claim, there is no longer a federal cause of action in this lawsuit.

The Court may decline to exercise supplemental jurisdiction over a state-law claim if it has dismissed all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *Rhyne v. Henderson Cty.*, 973 F.2d 386, 395 (5th Cir. 1992).  Here, the Court should exercise that discretion and remand Plaintiff's surviving state law claim of assault and this case to state court.

### IV. Defendant's Motion for Sanctions

Defendant seeks sanctions against Plaintiff for violating the Court's May 29, 2020 oral order during its initial pretrial conference that Plaintiff cease the improper service of pleadings on Defendant and its representatives.  (Def. Motion [#42] at 1.)  The Court ordered Plaintiff to

serve all future pleadings on counsel for Defendant, in accordance with Rule 5. *See* Fed. R. Civ.

Pr. 5(b). Despite this order, Plaintiff served multiple employees of Defendant with a copy of his

Amended Complaint and with his Opposition to Frost Bank's Second Motion to Dismiss. (*Id.*)

Defendant asks that Plaintiff be sanctioned with a $500 fine "which represents only a portion of

the fees and costs sustained by Defendant in bringing this matter to the Court's attention." (*Id.* at

4.)

Rule 11 gives the Court discretion to impose sanctions when a pleading or motion is

lacking in evidentiary support, is not warranted by existing law, or is filed for an improper

purpose. Fed. R. Civ. P. 11(c)(1). Rule 11 sanctions against a party are a rare and extraordinary

remedy that should only be invoked where an action is clearly frivolous and constitutes an abuse

of the judicial process. *Laughlin v. Perot*, No. CA 3-95-CV-2577-R, 1997 WL 135676, at *8

(N.D. Tex. Mar. 12, 1997). Here, employees of Defendant were served with Plaintiff's pleadings

from e-File Texas. (Def. Motion Ex. B [#42-2] at 2; Ex. C [#42-3] at 2.) Plaintiff claims this

was an automatic notification sent by the Texas courts "to original indispensable parties

originally registered into the system as of Dec. 3, 2019." (Pl. Response [#44] at 2.) Plaintiff

argues that there is not a federal or local rule prohibiting e-notification from a Texas court. (*Id.*)

Although Plaintiff may have violated this Court's order by serving employees of

Defendants, it appears Plaintiff may have done this inadvertently. Because Plaintiff is *pro se*, he

should be given the benefit of the doubt. Thus, the undersigned recommends that the District

Court not issue sanctions against Plaintiff for this conduct, which does not rise to the level of

sanctionable abuse of the judicial process. But Plaintiff is admonished that Frost Bank is the

only Defendant in this lawsuit, and for as long as this suit is pending in federal court, only Frost

Bank should be served through its counsel of record.

## V. Plaintiff's Motion for Leave to File a Second Amendment to the Complaint

Plaintiff asks the Court for one more opportunity to amend his pleadings.  His proposed Second Amended Complaint names four new defendants, all Frost Bank employees, and adds eight new causes of action.  The Court should deny Plaintiff's motion for leave to amend.  Although leave to amend should be freely granted when justice so requires, the Court may deny leave to amend if it has a "substantial reason" to do so.  *See* Fed. R. Civ. P. 15(a)(2); *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002).  While three of the causes of action concern federal law, they are insufficiently pleaded and futile, and therefore do not confer federal question jurisdiction over this case.  Nor do the additional factual allegations in the proposed Second Amended Complaint cure the identified deficiencies with respect to Plaintiff's RICO claim, the only cause of action giving rise to federal question jurisdiction.  Plaintiff should not be permitted to add non-diverse defendants to sue them for state-law causes of action either.  Those claims can be brought in state court.

The Court has already provided Plaintiff with one opportunity to cure identified pleading deficiencies.  Nothing more is required, even as to *pro se* plaintiffs.  *See Brewser v. Dretke*, 587 F.3d 764, 767–768 (5th Cir. 2009) (holding that a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed, unless he has already pleaded his "best case").  Plaintiff was already provided an opportunity to cure his pleading defects, and his Second Amended Complaint attempts to add many new claims and new defendants beyond what he included in his First Amended Complaint.  In ruling on a motion for leave to amend, the court may consider whether the moving party failed to take advantage of earlier opportunities to amend.  *See Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998); *see, e.g., Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992) (denying the plaintiffs' motion for

leave to amend where they failed to take advantage of prior opportunity to amend and join new parties). Plaintiff failed to take advantage of his prior leave to file his First Amended Complaint. Plaintiff's motion for leave to amend should be denied.

## VI. Conclusion and Recommendations

Having considered the motions before the Court, the responses and replies thereto, the pleadings, the record before the Court, and the governing law, the undersigned recommends that Defendant's Motion to Dismiss [#40] be **GRANTED IN PART** as set forth herein. If the Court accepts this recommendation, the Court should decline to exercise supplemental jurisdiction over Plaintiff's sole remaining claim of assault, which arises under Texas law, and **REMAND** this case to state court.

The undersigned further recommends that the Court **DENY** Defendant's Motion for Sanctions [#42] and Plaintiff's Motion for Leave to File a Second Complaint [#49]**.**

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the

proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of December, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE